[Civ. No. 6600.   Second Appellate District, Division Two.—March 17, 1931.]

R. B. CHRISTENSEN et al., Respondents, v. LOS ANGELES ELECTRICAL SUPPLY COMPANY (a Corporation), Appellant.

F. A. Preston and Bailie, Turner & Lake for Appellant.

McNeil & Cotter and Edgar H. Craddock for Respondents.

WORKS, P. J.—This is an action to recover damages for the death of the mother of the plaintiff minor. The events because of which Mrs. La Paughl lost her life occurred upon a dark and very rainy night, on Twenty-third Street, near its intersection with Oak Street, in Los Angeles. A truck driven by defendant Watkins was proceeding westward on the numbered street, the driver having with him as a passenger one Howeth. When the vehicle had gotten about fifteen feet west of the intersection its right front fender struck Mrs. La Paughl, who was seen by neither Watkins nor Howeth until the moment of the impact, and knocked her to the pavement.

■ The plaintiffs had judgment and the corporation defendant, the employer of Watkins, appeals.

The following statement of a part of the testimony of Watkins appears in the brief of respondents, the italics being those of the brief:

"I only saw the woman at the very instant of the impact between her and the right front fender of the truck. I do not know whether or not she had been walking on West 23rd street toward the truck, away from the truck, or had approached from the side. The truck travelled about twenty feet from the place of the accident to the place where I stopped it alongside of and parallel with the northerly curb of West 23rd street. Mr. Howeth left the truck first. He *ran immediately* to the woman. I *immediately* followed him. She lay on the pavement between the northerly rail of the westbound car track and the northerly curb of West 23rd street. Her head was toward the curb. She was dressed in dark clothing. She had a long coat on made of a dark material. The coat had a large collar. She had been carrying an umbrella. It was made of dark purple material. It was wet. The umbrella was broken when we found it but it had the appearance of having been open at the time of the accident. After we arrived at the place where the woman was lying *and as we stooped* down to pick her up, a Ford automobile approached along West 23rd street from the east. It was about *twenty feet* away when I first saw it. It was going west on 23rd street between the northerly rail of the westbound car track and the northerly curb of that street. The woman was lying on the pavement directly in the path of that automobile. The Ford automobile was approaching at a speed of about twenty-five miles per hour. Mr. Howeth made an effort to signal that automobile. He had a flashlight and was flashing it toward the Ford automobile as it approached. It did not seem to me that the speed of the Ford automobile was slackened as it approached the place where the woman was lying. If it did slacken at all it was not to any appreciable extent. The lights on the Ford automobile were burning. Mr. Howeth had to jump back to avoid being struck. I also jumped back. The Ford automobile passed directly over the woman. It did not stop."

Immediately after Mrs. La Paughl was run over by the Ford car she was taken to a residence near at hand. She never recovered consciousness and died that same night. She was seen by several persons after the accidents and during her unconsciousness, and her body, of course, was seen by some persons after her death. A number of these various persons were called as witnesses by the plaintiffs, but none of them was asked a single question to bring forth proof as to the nature or extent of her injuries, or whether her death was caused by the collision of the truck with her person or by the wheels of the Ford as they passed over her. It was not shown that she bled. It was not shown that there were bruises, cuts or lacerations on any part of her person, whether caused by a blow or by moving wheels. It was not shown whether bones were broken, either by a blow or by the rolling of wheels across her person. Indeed, respondents do not contend that it can be determined from the record whether the death of the unfortunate woman was caused by the one vehicle or by the other. And they say in their brief that ''it is immaterial whether it was the truck or the Ford that caused Ellen La Paughl's death, and further that it does not lie in appellant's mouth to complain that the driver of the Ford may have been negligent, or may have actually killed Mrs. La Paughl, since the evidence amply supports the jury's implied finding that Watkins' negligence was the proximate cause of Mrs. La Paughl's death''.

Respondents then quote from section 10 of Beach on Contributory Negligence, thus: ''An act is the proximate cause of an event when, in the natural order of things and under the circumstances, it would necessarily produce that event, when it is the first and direct power producing the result, the *causa causans* of the schoolmen.'' Following this quotation respondents cite in support of their contention *Carroll* v. *Central Counties Gas Co.,* 74 Cal. App. 303 [240 Pac. 53] , *Oakland Bank* v. *Murfey,* 68 Cal. 455 [9 Pac. 843], and *Merrill* v. *Los Angeles Gas & Elec. Corp.,* 158 Cal. 499 [139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559, 111 Pac. 534].

There is no room for the application of these cases in aid of respondents. Indeed, the statement of the rule in the Merrill case shows that it cannot help them. There was no

connection between the alleged negligence of Watkins and the act of the driver of the Ford in running his car over Mrs. La Paughl. That act did not "follow from the original wrong in unbroken sequence". It did not follow from, that is, it was not caused by, "the original wrong" at all. Mrs. La Paughl was struck down by the truck. Watkins drove to the curb and stopped his vehicle twenty feet beyond the place where she lay. He and his passenger leaped from their seat, ran back to the recumbent form and bent over it long enough to determine that the stricken woman was unconscious. The Ford car was seen approaching. Howeth endeavored to stop its onrush by flashing his electric torch, but in vain, and the Ford passed over the body of the unfortunate woman. We cannot but conclude that she was the unhappy victim of two independent and, in a legal sense, totally distinct casualties. Surely, the first cause did not set any other cause in motion or into activiity. It is equally true that the second act was "disconnected in time and nature" (*Carroll* v. *Central Counties Gas Co.*, *supra*) from the first. Suppose Watkins and Howeth had not discovered what object was struck by the fender of the truck and had driven on. Suppose the Ford came along an hour later and ran over the prostrate woman. Suppose someone appeared on the scene soon after and discovered that she was still unconscious, but that she died later. Suppose the nature of both catastrophies was afterward discovered and that respondents then brought suit for damages against Watkins and his employer. It is certain that respondent must then have shown whether the victim's death was caused by the truck or by the Ford. There is no difference between such a situation and the one here actually presented.

Other points are made by appellant but we find it unnecessary to decide them.

. Judgment reversed and cause remanded for a new trial.

Craig, J., and Thompson (Ira F.), J., concurred.